**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**,

Plaintiff,

vs. No. CR 07-697 MCA

**ALFRED R. TAFOYA**,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the following motions: (1) *Defendant's Motion in Limine to Prohibit Introduction, at Trial, of Defendant's Testimony at Suppression Hearing* [Doc. 59] filed on December 6, 2007; (2) *Defendant's Motion in Limine to Exclude Introduction, at Trial, of Evidence Seized from 7205 Cardiff N.E., Which is Not Relevant to the Charge of Felon in Possession of a Firearm, Occurring on January 14, 2007* [Doc. 60] filed on December 6, 2007; (3) the *United States' Motion in Limine to Exclude the Defense of Justification* [Doc. 76] filed on December 21, 2007; and (4) the Government's *Notice of Intent to Use Evidence Pursuant to Rules 404(b) of the Federal Rules of Evidence* [Doc. 64] filed on December 14, 2007. The Court held hearings on the above motions on January 8, 2008; January 24, 2008; February 4, 2008; and February 5, 2008. Having reviewed the parties' submissions, the relevant law, the arguments and evidence presented at the motions hearing, and being otherwise fully advised in the premises, the Court grants the two defense

motions listed above, denies the Government's motion, and limits the evidence admissible under Fed. R. Evid. 404(b) for the reasons set forth below.

## I. BACKGROUND

On April 10, 2007, Defendant Alfred R. Tafoya was indicted on a single count of being a felon in possession of a firearm on or about January 14, 2007. On or about June 12, 2007, Defendant filed a series of motions to suppress evidence and to obtain discovery. [Doc. 13, 14, 15, 16, 17.] The Court held a hearing on those motions on August 20, 2007 [Doc. 36], and issued a *Memorandum Opinion and Order* [Doc. 43] on October 18, 2007. As a result of that ruling, the Government is precluded from introducing at trial the content of Defendant's communications with Detectives Donges and St. Onge of the Valencia County Sheriff's Department. In a subsequent ruling, the Court granted the parties leave to take the deposition of a defense witness (Jarred Lewis), who was scheduled to leave the country on active military duty at the end of November 2007. [Doc. 46, 48].

On December 5, 2007, the Government obtained a *Superseding Indictment* [Doc. 54] adding a charge of being a felon in possession of body armor on or about February 13th, 2007. Defendant responded to the *Superseding Indictment* by, among other things, filing a *Motion for Severance of Counts* [Doc. 55], which the Court granted in an *Order* [Doc. 90] filed on January 2, 2008. As a result, the Court is scheduled to conduct a trial on the firearm charge (Count 1) commencing on February 19, 2008, and the trial on the body-armor charge (Count 2) is to occur separately at a later date.

The firearm charge alleged in Count 1 of the *Superseding Indictment* arises from a series of altercations at 17 Fermin Chavez Road in Valencia County, New Mexico, on the night of January 14, 2007 and the early hours of January 15, 2007, when Defendant allegedly fired or possessed a shotgun. That shotgun allegedly was recovered by government agents executing a search warrant at a residence shared by Defendant and his family on February 13, 2007. Both the January 14th altercation and the February 13th search warrant are described in more detail in the factual findings contained in the Court's *Memorandum Opinion and Order* [Doc. 43] addressing Defendant's motions to suppress and discovery motions.

Defendant does not dispute that he momentarily possessed a shotgun in order to protect himself and his fugitive recovery partner, Susan Lopez, from further attack during the altercation on the night of January 14, 2007. [Doc. 83.] Nevertheless, Defendant has moved to preclude the Government from using the testimony he gave at the suppression hearing against him at trial. [Doc. 59.]

It is also anticipated that Defendant will present evidence at trial that his momentary possession of a shotgun during the altercation on the night of January 14, 2007, was legally justified by the necessity defense that the Tenth Circuit recognized in United States v. Al-Rekabi, 454 F.3d 1113, 1121-22 (10th Cir. 2006). The Government has moved to preclude the Defendant from presenting evidence at trial to support such a defense. [Doc. 76.]

The Government also wishes to present evidence that four other firearms (besides the shotgun) were found in Defendant's residence during the execution of a search warrant on

February 13, 2007. [Doc. 71.] Finally, the Government wishes to present evidence that two other individuals saw a shotgun in Defendant's blue Volkswagen at some time during November 2006, and that Defendant admitted his ownership of the shotgun to one of these individuals in December 2006. [Doc. 64.] Defendant moves to preclude the Government from introducing such evidence. [Doc. 60, 67.]

## II. ANALYSIS

### A. The Government's Motion to Exclude the Defense of Justification

As a general matter, the Government's task of proving each of the essential elements of the crime of being a felon in possession of a firearm does not depend on a felon's motives or reasons for knowingly possessing a firearm. All that the Government must prove is that (1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm, and (3) the defendant's possession of the firearm was in and affecting interstate commerce. See United States v. Baker, No. 07-3002, 2007 WL 4269055, at *3 (10th Cir. Dec. 6, 2007) (citing United States v. DeSoto, 950 F.2d 626, 632 (10th Cir. 1991)); Tenth Circuit Criminal Pattern Jury Instruction No. 2.44 (2005).

The Government does not bear the burden of *disproving* that a defendant's knowing possession of a firearm was legally justified, unless that justification would negate an essential element of the offense. See United States v. Unser, 165 F.3d 755, 764-65 (10th Cir. 1999). And our Supreme Court has recently concluded that the defenses of duress and necessity do not negate a defendant's criminal state of mind when the applicable offense

requires a defendant to have acted knowingly or willfully. See United States v. Dixon, 126 S. Ct. 2437, 2442 (2006).

Nevertheless, the Tenth Circuit has recognized the availability of a necessity defense in very limited circumstances. It is the Defendant's burden to prove the necessity defense by a preponderence of the evidence. See Al-Rekabi, 454 F.3d at 1122; Unser, 165 F.3d at 764-65. To prevail on such a defense, a defendant must show: (1) that he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct of knowingly possessing a firearm; (3) that he had no reasonable, legal alternative to violating the law under which he could have both refused to knowingly possess the firearm and also avoided the threatened harm; and (4) that a direct causal relationship may be reasonably anticipated between his knowing possession of the firearm and the avoidance of the threatened harm. See United States v. Vigil, 743 F.2d 751, 755 (10th Cir. 1984) (quoting United States v. Gant, 691 F.2d 1159, 1162-64 (5th Cir. 1982)); Al-Rekabi, 454 F.3d at 1121; State v. Crawford, 521 A.2d 1193, 1200 (Md. 1987); People v. King, 582 P.2d 1000, 1008-09 (Cal. 1978); 2 Wayne R. LaFave, Substantive Criminal Law § 10.1(d), at 124-33 (2d ed. 2003). Necessity is thus a "choice of evils" defense, where "forces beyond the actor's control rendered illegal conduct [such as possessing a firearm] the lesser of two evils." United States v. Bailey, 444 U.S. 394, 409-10 (1980).

While the District Court serves as a gatekeeper for purposes of determining whether to allow this defense to be presented to the jury, the Court must view the evidence in the light most favorable to the Defendant when performing its gatekeeping role, so that questions of witness credibility are left for the jury to decide. See Al-Rekabi, 454 F.3d at 1122. Thus, the question presently before the Court is whether the evidence proffered by the Defendant would support an affirmative defense of necessity "*if a jury finds it to be true.*" Bailey, 444 U.S. at 415 (emphasis added).

The Government contends that a necessity defense is unavailable to the Defendant in this case. To support this contention, the Government intends to present evidence that Defendant's possession of the shotgun at issue here was not limited to the time span of the altercation at 17 Fermin Chavez Road on the night of January 14, 2007, and that, in any event, Defendant himself created the situation that led to the altercation in which he discharged the shotgun. Thus, according to the Government's view of the evidence, Defendant is not entitled to present the jury with a defense of necessity because he had a legal alternative to possessing the shotgun (*e.g.*, not going to the 17 Fermin Chavez Road residence in the first place), and because he continued to possess the shotgun at times when the threat presented by the residents of that address was not imminent (*e.g.*, before and after the altercation). See Gant, 691 F.2d at 1163 n.9 (noting that continued possession beyond the time that the emergency exists will defeat a necessity defense); id. at 1164 (noting that the necessity defense is unavailable when there was a reasonable alternative to violating the law, such as retreating or calling the police).

The Government's contentions do not suffice to preclude the Defendant from presenting evidence on the necessity defense in this case because they are based on viewing the evidence in the light most favorable to the Government, rather than viewing the evidence in the light most favorable to the Defendant. See Bailey, 444 U.S. at 415; Al-Rekabi, 454 F.3d at 1122. The Defendant disputes the Government's view of the evidence and intends to present contrary testimony. In particular, it is anticipated that Defendant will present evidence that he did not know or reasonably foresee that he and Ms. Lopez would be violently attacked by the residents at 17 Fermin Chavez Road on the night of January 14, 2007, because the information available to him when he decided to go there indicated that the suspect was going to surrender voluntarily in a consensual encounter. If the jury were to believe the anticipated defense testimony that it was not reasonably foreseeable to the fugitive recovery agents that they faced the prospect of such a violent, life-threatening attack when they went the 17 Fermin Chavez Road residence on the night of January 14, 2007, then the jury could reasonably infer that Defendant had not recklessly or negligently placed himself in that situation. See 2 Wayne R. LaFave, supra, § 10.1(d)(6), at 132; Crawford, 521 A.2d at 1199-1201 (noting the availability of the necessity defense in "the unexpected and sudden circumstance when an individual is threatened with present, impending danger to his life or limb and as a consequence has no time to seek other protection").

Defendant also may dispute the Government's view that he *knowingly* possessed the shotgun on other occasions besides the January 14 attack and its immediate aftermath. Because knowledge of his possession of the shotgun is an essential element of the

Government's case, Defendant does not bear the burden of presenting evidence regarding his *lack* of such knowledge in order to present a necessity defense to the jury. See Unser, 165 F.3d at 764-65. Further, while Defendant may admit to knowingly possessing the shotgun during the period of time for which he asserts the necessity defense, that admission does not necessarily preclude him from denying that he knowingly possessed the shotgun during other periods of time before or after the attack.

Even if one were to assume that the shotgun was in Defendant's vehicle (or in some other location where he had access to it) before the January 14 attack occurred, the jury would not be required to infer that Defendant *knew* that the shotgun was in that location before the attack, or that he had exclusive possession of the vehicle at all times. See, e.g., United States v. Mills, 29 F.3d 545, 549-50 (10th Cir. 1994). And to the extent that Defendant did not surrender the shotgun immediately after the January 14 attack, he may present evidence that a medical emergency and/or the need for a hasty retreat in light of the continuing threat left him with no alternative but to continue possessing the shotgun during that period of time, and that he transferred possession of the shotgun to another individual (not necessarily affiliated with law enforcement) after the emergency subsided. If the jury were to believe such testimony and, at the same time, discredit any testimony from the Government's witnesses that Defendant knowingly possessed the shotgun on other occasions, then the necessity defense would remain viable as to the January 14 attack and its immediate aftermath, and the jury could find that the Government did not meet its burden of proof as to such other occasions.

Viewing the anticipated evidence in the light most favorable to the Defendant, I conclude that Defendant is not precluded from presenting evidence at trial concerning the necessity defense during the period of the January 14th attack and its immediate aftermath. The Government's motion in limine is, therefore, denied. Counsel are reminded, however, that because the Court's decision is based on proffers of *anticipated* evidence, rather than the *actual* evidence presented at trial, this decision is subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**B. The Government's Notice of Intent to Introduce Rule 404(b) Evidence**

I next address the Government's efforts to introduce evidence that Defendant possessed a shotgun on other occasions prior to January 14, 2007, or that the shotgun was observed in his vehicle on such other occasions. With its notice filed on December 14, 2007, the Government attaches two police reports of witness interviews conducted on December 11, 2007. These reports indicate that the shotgun at issue in this case was seen in Defendant's vehicle at some time during November 2006, and that Defendant identified the shotgun as belonging to him at some time during December 2006. [Ex. 1 to Doc. 64-2; Ex. 2 to Doc. 64-3.] While the police reports themselves would be inadmissible hearsay because they contain testimonial statements offered for the truth of the matter asserted, see Davis v. Washington, 126 S. Ct. 2266, 2273-74 (2006), the Court will further examine whether live testimony by the witnesses themselves would be admissible at trial under Fed. R. Evid. 404(b).

Under Fed. R. Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence may be admitted, however, to establish motive, intent, knowledge, preparation, plan, identity, and absence of mistake or accident. See id.; United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000); United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994).

To determine whether evidence is admissible for one of the purposes stated above, the Court applies the four-part test articulated by the Supreme Court in Huddleston v. United States, 485 U.S. 681, 691-92 (1988). This test requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

Zamora, 222 F.3d at 762 (quoting United States v. Roberts, 185 F.3d 1125, 1141 (10th Cir.1999)).

In this case, the Government asserts that live witness testimony along the lines of what is reported in the two statements dated December 11, 2007, is relevant and admissible under Fed. R. Evid. 404(b) because the presence of the shotgun in Defendant's vehicle in November 2006, or his claim of owning the shotgun in December 2006, provide circumstantial evidence to support the contention that he already knew the shotgun was in his possession in his vehicle *before* the visit to the 17 Fermin Chavez Road residence rose

to the level of an emergency. Testimony along these lines also would serve to rebut the inference that the shotgun's fortuitous appearance at the time when Defendant needed it to repel his attackers on that date was the result of mistake or accident. See United States v. Moran, 503 F.3d 1135, 1144 (10th Cir. 2007).

The Court agrees that these are proper purposes for admitting evidence under Fed. R. Evid. 404(b), and that such evidence is relevant and probative with respect to the crime charged in Count 1 of the *Superseding Indictment*. Further, the anticipated testimony regarding the two witnesses' observation of the shotgun in November 2006 or hearing Defendant's statements about the shotgun during December 2006 is not inextricably intertwined with unfairly prejudicial evidence concerning Defendant's prior bad acts or other uncharged conduct not involving the shotgun. While defense counsel may wish to cross-examine the witnesses' potential motives for providing testimony that is favorable to the Government, it does not appear that such cross-examination on witness credibility issues would necessarily entail the disclosure of extraneous information that would be unfairly prejudicial to the Defendant. For these reasons, the Court concludes that the probative value of the Government's proffered Rule 404(b) evidence is not substantially outweighed by the danger of unfair prejudice or other considerations under Fed. R. Evid. 403.

In addition, the Court will offer a limiting instruction adapted from Tenth Circuit Criminal Pattern Jury Instruction No. 1.30 (Feb. 2006), to advise the jury of the limited purposes for which evidence regarding the events of November 2006 and/or December 2006 are being offered, and to mitigate the potential for unfair prejudice or juror confusion

occasioned by the admission of such evidence. The Court's ruling also is subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial. Therefore, counsel must advise both the Court and opposing counsel if and when he is ready to introduce this topic to the jury so that Defendant has the opportunity to renew his objection and the Court has the opportunity to provide a timely limiting instruction.

**C. Defendant's Motion in Limine Regarding 7205 Cardiff N.E.**

Defendant next moves to exclude certain evidence that government agents found in his family's residence at 7205 Cardiff N.E. during the execution of the search warrant on February 13, 2007. According to the Government's proffer, the evidence found in the family residence includes: (1) the Mossberg, model 500A, 12 gauge shotgun which is identified as the firearm at issue in Count 1 of the *Superseding Indictment* [Doc. 53]; (2) the sales receipt for that shotgun; (3) 12-gauge shotgun ammunition; (4) the Point Blank Body Armor, model PB-GF 11 A-1, which is identified as the body armor at issue in Count 2 of the *Superseding Indictment* [Doc. 53]; (5) two rifles discovered in the same room where the shotgun was found; and (6) two pistol firearms found in a separate bedroom. [Doc. 71.]

While Defendant may dispute that he owned or possessed them at the time the search warrant was executed on February 13, 2007, the shotgun, sales receipt, and shotgun ammunition are relevant and admissible for the purpose of proving that he knowingly possessed a firearm on or about January 14, 2007. As noted in the previous discussion of the Government's other Rule 404(b) evidence, the fact that the shotgun and items directly related to it were found in Defendant's family residence on the latter date provides

circumstantial evidence that Defendant may have knowingly possessed the shotgun on the earlier date.

The same cannot be said for the body armor or the other firearms found in the family residence on February 13, 2007. The Government does not assert that these other firearms (*i.e.*, the two rifles and the two pistols) were owned or possessed by the Defendant [Doc. 71], and after the Government withdrew its opposition to Defendant's motion to sever, the Court severed the trial on the body-armor charge (Count 2) from the trial on the firearm charge (Count 1). [Doc. 90.] Moreover, the Government has not shown that the presence of these items in Defendant's family residence on February 13, 2007, has any discernible relationship to the shotgun which Defendant allegedly possessed on or about January 13, 2007.

Under these circumstances, the admission of evidence concerning the body armor and other firearms during the trial on Count 1 is very likely to cause jurors to draw prohibited inferences about criminal propensity in general, or to infer constructive possession of the shotgun by "piling inference upon inference." United States v. Ledford, 443 F.3d 702, 713 (10th Cir. 2005). While it is true that such evidence might also support a weak and indirect inference that Defendant had some familiarity with, or access to, firearms in general or other "tools of the trade" used in the fugitive recovery business, the probative value of using the body armor and other firearms for this limited purpose is further minimized by the fact that it would be cumulative of other evidence (such as the testimony of other fugitive recovery agents identified in the Government's Rule 404(b) notice) through which the Government

may establish Defendant's familiarity with firearms or tools of the fugitive recovery business by alternative means.

District courts are given broad discretion to making Rule 403 balancing decisions in order to ensure that such decisions are tailored to the unique facts of each case. In this instance, I have exercised that discretion by allowing a limited amount of Rule 404(b) evidence concerning the observations of other fugitive recovery agents in November 2006 and December 2006, as well as the seizure of the shotgun, shotgun ammunition, and sales receipt on February 13, 2007. The admission of such evidence is then balanced by the exclusion of other matters (such as that relating to other items found in the residence) in order to ensure that the probative value of the Government's evidence as a whole is not substantially outweighed by the danger that the jury will draw impermissible inferences from it. Recognizing that this balance is a delicate one, the Court also leaves open the possibility of reconsidering its evidentiary rulings at trial if the testimony does not flow in the manner previously anticipated.

**D. Defendant's Motion in Limine Regarding Suppression Hearing**

Defendant's next motion in limine seeks to preclude the Government from using the testimony he gave at the suppression hearing on August 20, 2007, to impeach him at trial. In response to this motion, the Government asserts that not only is Defendant's prior testimony at the suppression hearing admissible at trial for impeachment purposes, his pre-arrest statements to Detectives Donges and St. Onge are likewise admissible for impeachment purposes.

As previously noted in the Court's *Memorandum Opinion and Order* [Doc. 43] filed on October 18, 2007, Defendant's pre-arrest statements that were suppressed in that ruling cannot be used by the Government for *any* purpose at trial (including impeachment) because they were *involuntary*. See New Jersey v. Portash, 440 U.S. 450, 458-59 (1979); Mincey v. Arizona, 437 U.S. 385, 397 (1978). The Government's arguments to the contrary in its response brief are incorrect because they fail to distinguish *involuntary* statements from mere violations of Miranda v. Arizona, 384 U.S. 436 (1966), or "prophylactic rules." Compare Portash, 440 U.S. at 458-59 (explaining why *involuntary* statements directly violate the Fifth Amendment privilege against compelled self-incrimination cannot be used for any purpose at trial), with Michigan v. Harvey, 494 U.S. 344, 350-51 (1990) (explaining why statements taken in violation of "only the prophylactic Miranda rules" can be used for impeachment purposes if a defendant testifies at trial). Because the pre-arrest statements at issue here were *involuntary* rather than merely lacking advance warning of Miranda rights, the authorities cited in the Government's response brief are inapposite. See Mincey, 437 U.S. at 397 (again emphasizing that while statements taken in violation of Miranda are admissible at trial for impeachment purposes if the trustworthiness satisfies legal standards, "*any* criminal trial use against a statement of his *involuntary* statement is a denial of due process of law").

It is also beyond dispute that the Government can use neither the suppressed pre-arrest statements themselves nor Defendant's testimony at the suppression hearing during its case-in-chief at trial in order to prove the essential elements of the crime charged in the *Superseding Indictment*. Allowing such use of Defendant's prior testimony at trial would

effectively force Defendant to choose between exercising his constitutional right to remain silent and exercising his other constitutional rights, such as the right to be free from unreasonable searches and seizures, and the right to be afforded due process. See Simmons v. United States, 390 U.S. 377, 394 (1968) (finding it "intolerable that one constitutional right should have to be surrendered in order to assert another" in this context). Again, the authorities cited by the Government on this point, which merely refer to the Federal Rules of Evidence without regard to constitutional requirements, are inapposite.

The remaining question is whether Defendant's testimony at the suppression hearing (as opposed to the pre-arrest statements at issue in that hearing) can be used for the limited purpose of impeaching him in the event that he elects to testify at trial. As previously noted in the *Memorandum Opinion and Order* [Doc. 43] filed on October 18, 2007, the case law from the appellate courts on this specific issue is less clear. See generally United States v. Salvucci, 448 U.S. 83, 93-94 & nn. 7, 8 (1980) (leaving open the question whether a defendant's testimony at a suppression hearing could be used for impeachment purposes at trial, and acknowledging that such testimony could "provide the prosecutor with information advantageous to the preparation of [the government's] case and trial strategy").

Nevertheless, even if one assumes for purposes of argument that such use of suppression-hearing testimony for impeachment purposes at trial is not prohibited *per se*, district courts still have a legitimate role to play in ensuring that the prior testimony which the Government seeks to use at trial for this purpose meets "traditional standards for evaluating voluntariness and trustworthiness." Oregon v. Hass, 420 U.S. 714, 723 (1975).

Indeed, our Supreme Court has recognized that such standards may be used to ferret out those cases where the deliberate exploitation of prior testimony for impeachment purposes rises beyond the level of "speculative possibility" and "amounts to an abuse." Id.

In performing this task, trial courts traditionally have examined whether the prior testimony from the suppression hearing that the Government seeks to use at trial was taken in compliance with Fed. R. Evid. 104(d). See, e.g., United States v. Jaswal, 47 F.3d 539, 543 (2nd Cir. 1995). And trial courts also may need to balance the probative value of such impeachment against its potential for unfair prejudice or other considerations listed in Fed. R. Evid. 403. See, e.g., United States v. Woody, Nos. 06-2100, 06-2104, 2007 WL 2974066, at *16-17 (10th Cir. Oct. 12, 2007) (noting the unfair prejudice that results when a prosecutor deceptively persuades the trial court to admit evidence under the pretext that it is being used for impeachment purposes and then later uses that same evidence for substantive purposes in closing argument).

In this case, the Court's earlier *Memorandum Opinion and Order* [Doc. 43] already made note of the prosecutor's attempt to exceed the limitations of Fed. R. Evid. 104(d) during his cross-examination of the Defendant at the suppression hearing. In that prior ruling, the Court also directed the Government to specifically identify and brief the issue of whether Defendant's testimony at the suppression hearing may be used to impeach him at trial. The Government did not raise this issue in a specific motion of its own, but only responded to the Defendant's motion by citing a series of authorities which are largely inapposite and which fail to specify any particular portion of the Defendant's prior testimony

that the Government would like to use at trial. In addition, the Court notes that there is a very significant potential for unfair prejudice as to this issue insofar as it may invite comment on the Defendant's exercise of his constitutional rights or other matters which are not properly before the jury.

Under these circumstances, the Court will not allow the Government to use Defendant's prior testimony at the suppression hearing during its case-in-chief, and the Court also is not inclined to allow the Government to use Defendant's prior testimony at the suppression hearing for impeachment purposes. Defendant's motion to exclude such evidence is, therefore, granted, subject to the previously stated *caveat* that all the Court's pretrial evidentiary rulings are subject to reconsideration in the event that unforeseen circumstances arise at trial. In the event that, at trial, the Government seeks to utilize a specific portion of Defendant's prior testimony for impeachment purposes during cross-examination should Defendant elect to testify, then counsel shall so alert the Court outside the presence of the jury, and the issue will be further addressed.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Defendant's motions in limine concerning the suppression hearing testimony and the other items found at the 7205 Cardiff N.E. residence, denies the Government's motion in limine, and limits the evidence to be admitted under Fed. R. 404(b). The Court's pretrial evidentiary rulings are subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**IT IS THEREFORE ORDERED** that *Defendant's Motion in Limine to Prohibit Introduction, at Trial, of Defendant's Testimony at Suppression Hearing* [Doc. 59] is **GRANTED**.

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine to Exclude Introduction, at Trial, of Evidence Seized from 7205 Cardiff N.E., Which is Not Relevant to the Charge of Felon in Possession of a Firearm, Occurring on January 14, 2007* [Doc. 60] is **GRANTED**.

**IT IS FURTHER ORDERED** that the *United States' Motion in Limine to Exclude the Defense of Justification* [Doc. 76] is **DENIED**.

**IT IS FURTHER ORDERED** that the testimony identified in the Government's *Notice of Intent to Use Evidence Pursuant to Rules 404(b) of the Federal Rules of Evidence* [Doc. 64] is admissible at trial subject to the limitations set forth above.

**SO ORDERED** in Albuquerque, New Mexico, this 7th day of February, 2008.

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**