**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**,

Plaintiff,

vs. No. CR 07-697 MCA

**ALFRED R. TAFOYA**,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on *Defendant's Motion in Limine to Exclude Evidence of January 15, 2007 Incident* [Doc. 57] filed on December 6, 2007. The Court held hearings on the above motions on January 8, 2008; January 24, 2008; February 4, 2008; February 5, 2008, and February 7, 2008. Having reviewed the parties' submissions, the relevant law, the arguments and evidence presented at the motions hearing, and being otherwise fully advised in the premises, the Defendant's motion is granted in part and denied in part for the reasons set forth below.

## I. BACKGROUND

The motion in limine at issue in this *Memorandum Opinion and Order* is the last in a series of motions concerning the admissibility of evidence at the trial of Count 1 of the *Superseding Indictment* [Doc. 54.] As noted in the Court's prior rulings on other motions, Defendant was originally charged with being a felon in possession of a firearm during an altercation at 17 Fermin Chavez Road in Valencia County, New Mexico, on the night of

January 14, 2007, when Defendant and another individual allegedly went to that address to apprehend a fugitive. The shotgun allegedly used in the January 14th altercation was recovered by government agents executing a search warrant at a residence shared by Defendant and his family on February 13, 2007.

Count 1 of the *Superseding Indictment* expands the time frame of the firearm charge to include a second incident during the early hours of January 15, 2007. Specifically, the Government wishes to present evidence that after the first altercation on the evening of January 14, 2007, Defendant and other fugitive recovery agents returned to 17 Fermin Chavez Road in the early morning hours of January 15, 2007, and Defendant again possessed the shotgun on that occasion. [Doc. 69.] Defendant's remaining motion in limine seeks to exclude evidence regarding his involvement in the events that occurred during the early hours of January 15, 2007.

Because of the potential invocation of the Fifth Amendment privilege against self-incrimination by many of the proposed witnesses whom the parties intended to call to testify about the January 15th incident, the Court appointed counsel for these individuals and held a series of hearings to determine the availability and scope of their anticipated trial testimony. In conjunction with those hearings, counsel for the Government represented that two of its proposed witnesses, Darlene Eller and Danielle Mirabal, had unrelated criminal charges pending in state court which were dismissed without prejudice due to the fugitive status of those individuals. Counsel for the Government represented that Ms. Eller remains a fugitive and is unavailable to testify in this matter for that reason, irrespective of whether

she would assert her Fifth Amendment privilege. Notwithstanding her fugitive status on the unrelated state charges, Ms. Mirabal appeared in this Court on two occasions, was appointed counsel, and decided to invoke her Fifth Amendment privilege. As indicated at the hearing, the Court agrees that this witness could validly assert a Fifth Amendment privilege that would effectively preclude her from testifying before the jury about the events of January 14, 2007, and January 15, 2007, under these circumstances.

The Court also conducted voir dire with respect to the following individuals who may have witnessed the January 15th incident and who, after consulting with their appointed counsel, elected not to invoke their Fifth Amendment privilege against self-incrimination: Dalton Kitrick, Dayna Curliss, Colt Otero, Cassandra Valencia, and Sean Lewis. Thus, it is anticipated that these individuals will be available to testify at trial.

Finally, the Court conducted voir dire of three other fugitive recovery agents who may have witnessed the events of January 14, 2007, and/or January 15, 2007: Robert Walker, Susan Lopez, and Ray Pinion. Separate counsel was appointed for each of these individuals, and although counsel for Mr. Walker and Ms. Lopez initially stated some concern about potential Fifth Amendment issues, these concerns were allayed by letters from the local district attorney's office granting immunity with respect to Mr. Walker's and Ms. Lopez's testimony in the case at bar. The Court understands these promises of immunity to supplant the Government's earlier responses to Defendant's discovery motions in this case, which had represented that the prosecution had made no such promises to any witnesses.

Mr. Pinion, whom the parties also identified as another fugitive recovery agent who witnessed the events of January 15, 2007, decided to invoke his Fifth Amendment privilege after consulting with his appointed counsel. Unlike Mr. Walker and Ms. Lopez, however, the Government has elected not to enter into any immunity agreements with Mr. Pinion, and thus it is anticipated that he will not be available to testify at trial in the case at bar. Defendant's counsel made a proffer that if he were to testify, Mr. Pinion would deny that Defendant possessed a shotgun during the January 15th incident. As indicated at the hearing, however, I agree that Mr. Pinion could validly assert a Fifth Amendment privilege that would effectively preclude him from testifying before the jury about his presence during the January 15th incident, irrespective of whether he did or did not observe Defendant possessing a shotgun on that occasion.

After the above concerns about the witnesses' potential invocation of their Fifth Amendment privileges were resolved, the Government finally was able to make a specific proffer (in the form of grand jury testimony) concerning what evidence it intends to introduce regarding the shotgun's alleged presence during or in relation to the January 15th incident. This proffer indicates that one of the fugitive recovery agents, Mr. Walker, actually saw Defendant in possession of the shotgun during the January 15th incident.

## II. ANALYSIS

In his motion papers, Defendant originally asserted that the evidence concerning the events of January 15, 2007, is not relevant because none of it relates to his possession of a shotgun as charged in Count 1 of the *Superseding Indictment*. In support of this assertion,

Defendant pointed out that neither the police reports [Ex. 1-4 to Doc. 25-2] nor the search warrant documents [Ex. 1-2 to Doc. 26-2], nor the prior testimony at the suppression hearing [Doc. 36; Tr. 8-20-07] contain any indication that there exists such a government witness who actually observed Defendant possessing the shotgun when he returned to the 17 Fermin Chavez Road residence on January 15, 2007. Rather, all of the evidence that was previously tendered on this subject indicates that Defendant possessed a "tazer" or "stun gun" that resembled a pistol or handgun during the January 15th incident. None of the pending charges relate to Defendant's possession of the tazer or stun gun, nor is there any indication that Defendant's possession of that item was unlawful.

Based on the Government's subsequent proffer of the grand jury testimony of Robert Walker, however, I find that Mr. Walker's proffered testimony about his observation of the firearm during the January 15th incident is directly relevant to prove the essential elements of the firearm charge alleged in Count 1 of the *Superseding Indictment*. I also find that Mr. Walker's proffered testimony regarding the alleged observation of a shotgun during the January 15th incident will be inextricably intertwined, to some degree, with a limited amount of background evidence necessary to place the events of that date in context and give the jury a sense of the perspective from which Mr. Walker made his observations.

The fact that the Government's most recent proffer concerning Mr. Walker's proposed testimony might be inconsistent with the police reports or previously disclosed testimony about what weapons Defendant possessed on January 15, 2007, is a matter of witness credibility for the jury to assess. Defendant's counsel will be afforded a fair opportunity to

cross-examine the Government's witnesses concerning such prior inconsistencies, the motives behind their testimony, their ability to perceive or remember the events in question, and any agreements or promises they may have received from the Government to secure their testimony. While the possibilities for impeaching the Government's witnesses in this manner could affect the jury's assessment of the weight of Mr. Walker's proffered testimony, such possibilities do not render this line of testimony inadmissible or unfairly prejudicial.

For these reasons, Defendant's motion in limine concerning the January 15th incident is denied in part insofar as it seeks to preclude Mr. Walker from testifying about his observation of Defendant possessing the shotgun during that incident and providing a limited amount of background information necessary to place these observations in context. Because such evidence is directly relevant to proving essential elements of the crime charged in Count 1 of the *Superseding Indictment*, its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other considerations listed in Fed. R. Evid. 403.

This ruling does not end the Court's inquiry, because I find that there remains a great danger of unfair prejudice if the Government is permitted to use Mr. Walker's proffered testimony concerning Defendant's alleged possession of the shotgun on January 15, 2007, as a springboard for the admission of further evidence concerning every other bad act the Defendant might have committed on or about that date. In this regard, the Court notes that some of the other witnesses alleged to be present during the January 15th incident are adverse to Defendant and may wish to make accusations unrelated to the charge at issue in

this case which cast Defendant in an extremely negative light (such as accusations that he or his fugitive recovery partners used excessive force or abused children or pets during the January 15th incident).

Presenting all such accusations and counter-accusations at trial would be unfairly prejudicial and confusing to the jury because it would invite a mini-trial on whether Defendant and his fugitive recovery partners were justified in forcibly entering the 17 Fermin Chavez Road residence and detaining its occupants on that occasion in order to take the fugitive into custody. Such a mini-trial would in turn invite the jury to become preoccupied with accusations unrelated to the shotgun and convict Defendant based solely on evidence of his aggressive conduct or malicious intent toward the residents of 17 Fermin Chavez Road on that occasion.

As the Court noted in its prior ruling on the justification defense [Doc. 120], the crime of being a felon in possession of a firearm, as charged in Count 1 of the *Superseding Indictment*, does not require proof that Defendant held any specific intent or malice toward anyone at the time of the alleged possession. See United States v. Baker, 508 F.3d 1321, 1324 (10th Cir. 2007) (citing United States v. DeSoto, 950 F.2d 626, 632 (10th Cir. 1991)); Tenth Circuit Criminal Pattern Jury Instruction No. 2.44 (2005). Evidence concerning Defendant's specific intentions during the January 15th incident also is not relevant to rebut a defense of justification or necessity, because Defendant is not claiming such a defense with respect to that incident. Rather, Defendant's claims regarding a necessity defense are limited

to earlier events on the evening of January 14, 2007, and Defendant is denying that he knowingly possessed the shotgun on any other occasion.

Under these circumstances, the Government has failed to show any specific nexus between the permissible purposes for admitting evidence under Rule 404(b) and the other events of January 15th (such as the forcible entry into the residence and the forcible detention of its occupants). Lacking such a specific nexus, evidence concerning these other events has the potential to cause jurors to draw the kind of "propensity inference" of bad character or criminal disposition that Fed. R. Evid. 403 and 404 prohibits. See United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007).

In order to avoid such likelihood of unfair prejudice, confusion of the issues, and other considerations listed in Fed. R. Evid. 403 and 404, I will place the following limitations on the admission of evidence at trial concerning the January 15th incident. First, I will require the Government to call and elicit testimony from Mr. Walker during its case-in-chief before it may call or elicit testimony from any other witnesses regarding the January 15th incident. On direct examination, and with respect to that portion of his testimony relating to the events occurring at the residence, Mr. Walker's testimony about the January 15th incident will be limited to describing his observations regarding Defendant's possession of the shotgun and the background information necessary to place those observations in context, such as the timing and purpose of the fugitive recovery agents' visit to the 17 Fermin Chavez Road residence, the respective positions of Mr. Walker and Defendant during that period, and the sequence of when Defendant came into or left the view of Mr. Walker. (Mr. Walker and

other witnesses may, of course, testify at any time about other matters besides the January 15th incident to the extent permitted by the Court's prior rulings.)

At the time of Mr. Walker's testimony about the January 15th incident, and/or at another time proposed by counsel, the Court will instruct the jury, with input from the parties, as to the limited purposes for which the jurors may consider the events of January 15, 2007. Such a limiting instruction will make clear to the jury that the evidence concerning the January 15th incident is to be considered only for the limited purpose of determining whether Defendant knowingly possessed the shotgun on that occasion, and that neither the Defendant nor any other person are on trial for any other acts that might have been committed during that time.

After the testimony of Mr. Walker, including any cross-examination, is completed, the Government may then elicit testimony from other witnesses concerning the January 15th incident during its case-in-chief, but only as necessary to clarify specific matters raised during Mr. Walker's testimony as it relates to Defendant's alleged possession of the shotgun, *i.e.*, whether they also observed Defendant possessing the shotgun, or whether they observed Mr. Walker in a position from which he could have seen what the Defendant was doing during the incident. Should Defendant's counsel raise additional issues on cross-examination which call for rebuttal, counsel for the Government is directed to alert the Court of the proposed scope of such rebuttal outside the jury's presence before proceeding any further, in order to allow for a timely objection by opposing counsel and an informed ruling by the Court.

Defendant's motion in limine concerning the January 15th incident is granted in part insofar as it seeks to limit the scope and timing of the Government's evidence on this subject in the manner specified above. As with all the Court's pretrial evidentiary rulings, however, the Court's ruling on this motion in limine is subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial. Should there by any doubt in counsel's mind as to whether or under what circumstances a particular question is permitted by the Court's pretrial rulings, they are directed to bring the matter to my attention outside the jury's presence before asking that question.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion in limine regarding the January 15th incident is granted in part and denied in part under the conditions specified above.

**IT IS THEREFORE ORDERED** that *Defendant's Motion in Limine to Exclude Evidence of January 15, 2007 Incident* [Doc. 57] is **GRANTED IN PART** and **DENIED IN PART** under the conditions set forth above.

**SO ORDERED** in Albuquerque, New Mexico, this 11th day of February, 2008.

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**