## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

     Plaintiff,

    vs.                                      No. CR 07-697 MCA

**ALFRED R. TAFOYA**,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's oral motion for a mistrial made in open court during the trial on February 20, 2008, and *Defendant's Motion for an Order Directing the Government to Grant Immunity or in the Alternative to Dismiss the Indictment* [Doc. 131] filed on February 15, 2008.  Being fully advised in the premises, the Court finds that it was necessary to grant a mistrial at Defendant's request because counsel for the Government elicited inadmissible testimony from a witness that substantially impaired the Defendant's right to a fair and impartial trial.  The Court further finds that Defendant's motion regarding immunity for Witness Ray Pinion is moot in light of the mistrial and the Government's decision to grant use immunity to Mr. Pinion on February 20, 2008.

The Supreme Court "has repeatedly reiterated that trial judges must be accorded broad discretion to declare a mistrial." Walck v. Edmondson, 472 F.3d 1227, 1236 (10th Cir. 2007). Declaring a mistrial is particularly appropriate "when a defendant's right to a fair and impartial trial has been impaired." United States v. Caballero, 277 F.3d 1235, 1242 (10th Cir.2002). To determine whether such an impairment has occurred, the Court must examine "the prejudicial impact of an error or errors when viewed in the context of an entire case," United States v. Gabaldon, 91 F.3d 91, 94 (10th Cir.1996), keeping in mind that "[t]he question for resolution is not the culpability of the government, but the fairness of the trial." United States v. Villa-Chaparro, 115 F.3d 797, 803 (10th Cir. 1997).

In this case, the Defendant is charged with being a felon in possession of a firearm from a period beginning on or about January 14, 2007, to on or about January 15th, 2007. Through the briefing and hearings on a number of pretrial motions, the Government clarified that Defendant's allegedly unlawful possession of a firearm during this period encompassed two incidents occurring in or around a residence at 17 Fermin Chavez Road in Valencia County, New Mexico. The first incident (referenced herein as "the January 14th incident") occurred when Defendant and another fugitive recovery agent, Susan Lopez, went to that address with the expectation that a fugitive, Darlene Eller, was going to "self-surrender" or turn herself in. The second incident (referenced herein as "the January 15th incident") occurred when Defendant returned to the same residence with other fugitive recovery agents (including Witness Robert Walker) in a second effort to apprehend Ms. Eller.

On December 6, 2007, Defendant filed a *Motion in Limine to Exclude Evidence of January 15, 2007 Incident* [Doc. 57] on the grounds that such evidence would be irrelevant because no one had alleged that Defendant possessed a shotgun or ammunition on that occasion.  In response to this motion, the Government proffered one witness, Robert Walker, who is alleged to have observed Defendant in possession of a shotgun during the January 15th incident.

In the *Memorandum Opinion and Order* [Doc. 124] filed on February 11, 2008, the Court accepted the Government's proffer regarding Mr. Walker's proposed testimony about his observation of Defendant in possession of a firearm during the January 15th incident, and the Court found that such testimony would be directly relevant to prove the essential elements of the firearm charge alleged in Count 1 of the *Superseding Indictment*.  The Court further found that Mr. Walker's proffered testimony regarding the alleged observation of a shotgun during the January 15th incident would be inextricably intertwined, to some degree, with a limited amount of background evidence necessary to place the events of that date in context and give the jury a sense of the perspective from which Mr. Walker made his observations. Accordingly, the Court allowed Mr. Walker to testify at trial about his observation of Defendant possessing a shotgun during that incident and to provide a limited amount of background information necessary to place these observations in context.

The Court also found, however, that there would be a great danger of unfair prejudice if the Government were permitted to use Mr. Walker's proffered testimony concerning Defendant's alleged possession of a shotgun on January 15, 2007, as a springboard for the

admission of further evidence concerning every other bad act the Defendant might have committed on or about that date.  In this regard, the Court noted the Government's failure to show any specific nexus between the permissible purposes for admitting evidence under Rule 404(b) and the other events of January 15th (such as the fugitive recovery agents' forcible entry into the residence and their forcible detention of its occupants).  Lacking such a specific nexus, the Court noted the likelihood that evidence concerning these other events would cause jurors to draw the kind of "propensity inference" of bad character or criminal disposition that Fed. R. Evid. 403 and 404 prohibits.  See United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007).

The Court further noted that if the evidence regarding the January 15th incident was not limited so as to avoid such propensity inferences, then other witnesses were likely to make accusations unrelated to the charge at issue in this case which cast Defendant in an extremely negative light.  Presenting such unrelated accusations at trial is unfairly prejudicial and confusing to the jury because it invites a mini-trial on whether Defendant and his fugitive recovery partners were justified in forcibly entering the 17 Fermin Chavez Road residence and forcibly detaining its occupants on that occasion in order to take the fugitive into custody.  Such a mini-trial would in turn invite the jury to become preoccupied with accusations unrelated to the shotgun and convict Defendant based solely on evidence of aggressive conduct or malicious intent toward the residents of 17 Fermin Chavez Road on that occasion.

In order to avoid such likelihood of unfair prejudice, confusion of the issues, and other considerations listed in Fed. R. Evid. 403 and 404, the Court's *Memorandum Opinion and Order* [Doc. 124] placed a number of very specific limitations on the admission of evidence at trial concerning the January 15th incident.  In addition to the limitations on the testimony of Witness Robert Walker noted above, the Court offered to provide a limiting instruction that was designed to explain to the jury the limited purposes for which they were to consider the evidence concerning the January 15th incident.

The Court's *Memorandum Opinion and Order* [Doc. 124] also instructed counsel that after Mr. Walker's trial testimony was completed, the Government would be given a limited opportunity to elicit testimony from other witnesses concerning the January 15th incident during its case-in-chief, "*but only as necessary to clarify specific matters raised during Mr. Walker's testimony as it relates to Defendant's alleged possession of the shotgun, i.e., whether they also observed Defendant possessing the shotgun, or whether they observed Mr. Walker in a position from which he could have seen what the Defendant was doing during the incident.*"  [Doc. 124, at 9.]  The Court also directed counsel for the Government to alert the Court outside the jury's presence "*before proceeding any further, in order to allow for a timely objection by opposing counsel and an informed ruling by the Court.*"  [Doc. 124, at 9.]  In this regard, the Court specifically advised that:  "*Should there b[e] any doubt in counsel's mind as to whether or under what circumstances a particular question is permitted by the Court's pretrial rulings, they are directed to bring the matter to my attention outside the jury's presence before asking that question.*"  [Doc. 124, at 10.]

The Court reminded counsel of these pretrial rulings at the beginning of the trial. In particular, I reminded counsel of "*the strict limitations that the Court put on any references to any of the extraneous conduct that occurred at the residence on the 15th. We did try to fashion . . . some reasonable parameters to put the matter in context but you have to understand the only concern on the 15th is the possession of the firearm, and this is not going to turn into a trial of evidence of fights and break-ins and everything else. That is highly prejudicial. So I would remind the Government . . . of its obligation based on the contours that the Court has set previously.*"  [Tr. 2-19-08.]

At trial, the Government first called Witness Susan Lopez to testify about the January 14th incident and an earlier incident referenced in the Court's pretrial ruling [Doc. 120] on the Government's *Notice of Intent to Use Evidence Pursuant to Rules 404(b) of the Federal Rules of Evidence* [Doc. 64]. The Government then called Witness Robert Walker to testify about the January 14th incident, the earlier incident noted above, and whether or to what extent Mr. Walker's observed Defendant possessing a shotgun during the January 15th incident. During cross-examination, Defendant's counsel elicited testimony which, among other things, called into question Mr. Walker's memory of the January 15th incident. Indeed, both Mr. Walker and Ms. Lopez testified that they had some difficulty remembering the incidents or their prior statements, but both witnesses agreed that Defendant had saved Ms. Lopez's life during the January 14th incident. Thus, neither Ms. Lopez's trial testimony nor that of Mr. Walker provided overwhelming testimony of the Defendant's guilt regarding the crime charged in the *Superseding Indictment*.

The Government's third witness at trial was Sergeant Simon Martinez, a deputy with the Valencia County Sheriff's Department. Initially, the Government elicited testimony from Sergeant Martinez about his actions and observations in responding to the scene of the January 14th incident. Then, without any attempt to alert the Court outside the jury's presence, counsel for the Government proceeded to elicit testimony from Sergeant Martinez about the January 15th incident by asking the following open-ended question: "*What happened after that?*" [Tr. 2-20-08.] The witness immediately responded: "*Probably a good 45 minutes later, dispatch dispatched us back out there and advised us that the bondsmen were back and that this time they were battering some of the residents.*" [Tr. 2-20-08.]

Due to the open-ended phrasing of the question and the immediacy of the witness' response, the Court had no opportunity to foresee that the Government was changing the subject to the January 15th incident. Immediately after the witness responded, however, Defendant's counsel asked to approach the bench and moved for a mistrial. The Court then conducted a bench conference and excused the jury from the courtroom so as to allow the parties to argue the motion outside the jury's presence.

Counsel for the Government responded to Defendant's motion for a mistrial by asserting that any error in Sergeant Martinez's response could be cured by providing the jury with the limiting instruction that the Court had previously offered in its ruling on the Defendant's motion in limine regarding the January 15th incident. Counsel for the

Government further contended that Sergeant Martinez's response was unlikely to cause unfair prejudice because it did not specifically mention the Defendant by name.

After hearing from counsel for both parties, I rejected the Government's contentions and stated that I would grant the Defendant's motion for a mistrial.  As I indicated during the hearing on this motion, Sergeant Martinez's testimony about "battering some of the residents" must be understood as referring to the Defendant in this case, because in the same sentence Sergeant Martinez also testified that "the bondsmen were back," thereby limiting the subject of his remarks to those bondsmen who had been to the residence previously during the January 14th incident.  The jury already had heard undisputed testimony that Defendant and Susan Lopez were the two fugitive recovery agents who had been to the residence and confronted the residents previously.  In addition, the jury already had heard undisputed testimony that Ms. Lopez was *not* one of the persons who returned to the residence, because she was seriously injured and taken by ambulance to a hospital after the January 14th incident.

Under these circumstances, I find that Sergeant Martinez's testimony caused unfair prejudice and confusion of the issues by implicating the Defendant in "battering the residents," an act for which he is not on trial in this case.  I further find that Sergeant Martinez's remarks about "battering some of the residents" clearly drew the jury's attention in a manner that called for further explanation, thus setting the stage for a distracting mini-trial concerning the propriety of the fugitive recovery agents' actions during their second effort to apprehend Ms. Eller.

The magnitude of this unfair prejudice and confusion of the issues is increased significantly because Sergeant Martinez attributed his allegation of "battering the residents" to his "dispatch" at the Valencia County Sheriff's Department.  Not only does Sergeant Martinez's testimony have the effect of cloaking the battery allegation in the authority of a neutral and official source, it also attributes this allegation to a source who is not in court and not available for cross-examination.  Indeed, the Government never identified or proffered any testimony from a dispatcher at the Valencia County Sheriff's Department in response to the extensive pretrial motion practice that has occurred in this case with respect to the January 15th incident.  To suddenly present trial testimony attributing testimonial statements to a dispatcher under these circumstances can create an undue risk of violating the Confrontation Clause of the Sixth Amendment.  See Davis v. Washington, 126 S. Ct. 2266, 2273-74 (2006).

Sergeant Martinez's testimony also directly contravenes the pretrial rulings contained in the Court's *Memorandum Opinion and Order* [Doc. 124] filed on February 11, 2008, of which the Court specifically reminded counsel at the beginning of the trial.  As a procedural matter, the manner in which the Government elicited Sergeant Martinez's testimony about the January 15th incident violates the Court's pretrial ruling because counsel for the Government failed to approach the bench and alert the Court or opposing counsel outside the jury's presence *before* he made the transition to the events of January 15th by asking the open-ended question: "What happened after that?"  Such an open-ended question was likely to elicit, and in fact did elicit, a response from the witness that does not conform to the

limitations the Court had previously imposed with respect to testimony about the January

15th incident.  In the context presented here, counsel should never ask open-ended questions

of this nature at trial without first having a reliable basis for predicting how the witness will

respond.[1]

The substance of Sergeant Martinez's testimony about the January 15th incident also

violates the Court's pretrial ruling because it lacks any specific nexus to whether or not

Defendant knowingly possessed a shotgun or ammunition during that incident.  Testimony

about whether a dispatcher advised Sergeant Martinez and other sheriff's deputies "that the

bondsmen were back and that this time they were battering some of the residents" has no

bearing on whether Mr. Walker saw the Defendant in possession of a shotgun during the

January 15th incident, nor does it give the jury any sense of the perspective from which Mr.

Walker made his observations during that incident.  As such, Sergeant Martinez's testimony

on this point has no relevance to the crime for which Defendant is on trial in this case, and

the probative value of this testimony is completely outweighed by the danger of unfair

prejudice, confusion of the issues, and other considerations articulated in Fed. R. Evid. 403

and in the Court's pretrial rulings.

---

[1]Even under circumstances where the Court had not issued pretrial rulings concerning the limitations to be placed on the introduction of such evidence, this Court would remind practitioners of the great risks inherent in conducting direct examination by the use of open-ended questions and questions that invite a narrative response.  While good witness preparation should ensure that an attorney has a reliable basis for predicting how the witness will respond, nevertheless such open-ended questions carry the risk of unintended elicitation of hearsay statements, statements that are unduly prejudicial to one side or the other, and other statements that are wholly irrelevant to the matters at issue or otherwise non-responsive.  Counsel are further reminded that it is possible to craft questions on direct examination that focus the witness on the particular subject at issue, but do not invite a narrative response or lead the witness by suggesting an answer.

Under these egregious circumstances, I found and now reiterate that the Government's error in eliciting Sergeant Martinez's testimony about the January 15th incident was not harmless and cannot be cured by instructing the jury to disregard such testimony. The proposed instruction regarding the January 15th incident which the Court had previously offered was never intended to suffice as the *only* limitation on the admissibility of evidence concerning that incident. Rather, this proposed instruction was intended to work together with the other limitations that the Court had imposed in its pretrial rulings, including the requirement that evidence of the January 15th incident have a specific nexus to the question whether Defendant knowingly possessed a shotgun during that incident, and the requirement that counsel alert the Court outside the jury's presence *before* attempting to expand the scope of such evidence.

To deny the Defendant's motion for a mistrial under these circumstances would give the Government free rein to violate both the procedural and substantive aspects of the Court's pretrial rulings regarding the January 15th incident in a manner that undermines the Defendant's right to a fair and impartial as well as the Court's authority to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." Fed. R. Evid. 611(a). For all of the above reasons, Defendant's oral motion for a mistrial made in open court during the trial on February 20, 2008, is granted.

The Court defers ruling on whether and when this case will be retried. The Court will hold a status conference on March 13, 2008, at 1:30 p.m. in order to afford the parties an opportunity to address those questions.

**IT IS THEREFORE ORDERED** that Defendant's oral motion for a mistrial made in open court during the trial on February 20, 2008, is **GRANTED**.

**IT IS FURTHER ORDERED** that a mistrial is declared in this matter and the jury is discharged.

**IT IS FURTHER ORDERED** that *Defendant's Motion for an Order Directing the Government to Grant Immunity or in the Alternative to Dismiss the Indictment* [Doc. 131] is **DENIED AS MOOT** in light of the Government's decision to grant use-immunity to Witness Ray Pinion and the Court's declaration of a mistrial.

**IT IS FURTHER ORDERED** that this matter is set for a STATUS CONFERENCE on March 13, 2008, at 1:30 p. m., at the United States Courthouse, 333 Lomas Boulevard NW, *Chama* Courtroom, Fourth Floor, Albuquerque, New Mexico.

**SO ORDERED** this 22nd day of February, 2008, in Albuquerque, New Mexico.

_____

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**